SMITH *et al.*, *Appellants*, v. JOHNSON *et al.*

DIVISION TWO.

1. **Practice in Supreme Court:** ASSIGNMENT OF ERRORS: ABSTRACT: PRESUMPTION. Where refusal to give instructions is assigned as error in the supreme court, but the refused instructions are not set forth in appellant's abstract, it will be presumed that that ground is not relied upon for a reversal of the judgment and the alleged error will not be considered.

2. —— : —— : —— : — ——. In such case it will be presumed'
that the court ruled correctly and that all proper and necessary
declarations of law were given.

3. **Conveyance of Land to Two Persons on Same Day:**
TITLE: PRIORITY. When a grantor conveys the same land to two
different persons on the same day, the deed which is first recorded
carries the title.

4. **Limitation:** ADVERSE POSSESSION : TAX DEED. Actual, contin-
uous and open adverse possession of a part of a lot under a tax
deed for the requisite period will confer title to the whole' by
limitation.

*Appeal from Greene Circuit Court.*—HON. W. D.
HUBBARD, Judge.

AFFIRMED.

*W. C. & B. B. Price* for appellants.

( 1 ) Technical disseizin, that is, such disseizin as
will eventuate in a conversion of the legal estate, must,
in its incipiency even, be begun under color of title or
claim of right, and be accompanied by all the legal'
necessities of intention by the disseizor to convert such
estate to his own use during the whole period of time
required by the statute ; and the occupancy thereunder
begun must be openly, notoriously, exclusively, consec-
utively and adversely or hostilely continued. 3 Wash-
burn [ 3 Ed. ] top pp. 116, 117, side p. 484. All other
disseizins being but disturbances of possession, disseizins
by election, or estates at will, cognizable by justice of
peace. R. S., secs. 5088, 5089, 5182 ; 4 Kent's Commen-
taries [ 12 Ed.] top and side p. 485 ; see also Washburn,
*supra*, top pp. 118, 119, side p. 485, and authorities
there referred to ; *Doan v. Sloan*, 42 Mo. 106 ; *Mabary
v. Dollarhide*, 98 Mo. 198. And the facts relied on to
sustain such possession must be proved, and not
presumed. *Lynde v. Williams*, 68 Mo. 360. And in
this respect improvements are not material facts. *Mis-
sissippi Co. v. Vowels*, 101 Mo. 225 ; Tiedeman on Real

Prop., secs. 692, 693, 698; 45 Mo. 384. (2) If it be true, that adverse seizin without color of title or claim of right, a naked trespass, can ripen into right, paramount to the legal estate, such a right can be at most only so far as actual occupancy extends; and, as in this case the specific locality of the part of south half of north half of lot 24, block 6, occupied by Jacob Painter is not specifically and particularly indentified by the testimony, there is in that respect a failure in the defense as to said south half of north half of said lot. *Avery v. Adams*, 69 Mo. 603; *Bradley v. West*, 60 Mo. 33.

*Charles W. Thrasher* for respondents.

(1) The abstract of record made by appellants, wholly failing to show what declarations of law were given or refused by the court below, it will be presumed that the court below ruled correctly. *Long v. Long*, 96 Mo. 180; *Craig v. Scudder*, 98 Mo. 664; *Jayne v. Wine*, 98 Mo. 404; *Flannery v. Railroad*, 97 Mo. 192; *Bank v. Iron Co.*, 97 Mo. 38. (2) The record in this cause shows no error against appellants materially affecting the merits of this action, and the evidence shows conclusively that the judgment of the court below was for the right party, and it should be affirmed. *Walsh v. Music Ass'n*, 101 Mo. 534; *Noble v. Blount*, 77 Mo. 235; *Gordon v. Eans*, 97 Mo. 587; *Valle v. Picton*, 91 Mo. 207; *MacLeod v. Skiles*, 81 Mo. 595; *Nelson v. Foster*, 66 Mo. 381; *Hoskinson v. Adkins*, 77 Mo. 537; *State ex rel. v. Edwards*, 78 Mo. 473.

MACFARLANE, J.—This is an action of ejectment, commenced in 1888, to recover the north half of lot 24, in block 6, in the town of Springfield. The judgment was for defendants, and plaintiffs appealed.

Plaintiffs showed *prima facie* a legal title to the lot, and defendants undertook to support their right thereto by evidence of previous adverse possession for ten years.

I.   The rules for the government of the practice in the supreme court require the appellant or plaintiff in error to set forth in his printed abstract "so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for its decision."   Plaintiff assigns as error the refusal of the court to give instructions asked by them, and its action in giving instructions asked by defendants. The instructions are not set forth in their abstract, and these alleged errors cannot be considered.   In such case it must be presumed that the action of the court in this regard is not relied upon as ground for reversal of the judgment.

The instructions not being before us, and the action of the court in giving and refusing them, not being relied upon as error, we must presume also that the circuit court ruled correctly, and that all proper and necessary declarations of law were given.   *Long v. Long,* 96 Mo. 180 ; *Jayne v. Wine,* 98 Mo. 404 ; *Craig v. Scudder,* 98 Mo. 664.

II.   The only question, then, for our further consideration is whether the evidence tended to prove that defendants, and those under whom they claim, had acquired the right to hold the property by virtue of a sufficient previous adverse possession.   This question makes necessary a brief review of the evidence.

No title was shown from the government.   Greene county seems to have been accepted as the common source of title.   On the same day, November 1, 1837, Daniel B. Miller, as commissioner of Greene county, made and delivered two deeds to lot 24, block 6, of the town of Springfield, one to W. R. Smith, the ancestor of plaintiffs, under whom they claim by inheritance. This deed was recorded in 1838.   The other was made to William Patton, which was not recorded until 1840. Defendants claim for their paper title under this deed. It will be seen that the deed under which plaintiffs claim, having been first recorded, carried the title.

Defendant then read a deed dated September 10, 1840, from Wm. Patton to Jacob Painter, purporting to convey to him the south half of lot 24, and offered evidence that Painter was, under that deed, put in possession of the south half of the north half of the lot. He built a blacksmith shop on this part of the lot in 1840, or 1841, which he used, claiming the land until September, 1858, when he sold and conveyed to one Butterfield, under the same erroneous description of the south half of the lot, instead of the south half of the north half thereof.

William Patton conveyed the half of the north half of the lot to William O. George, by deed, dated March 2, 1839, which was followed by a regular chain of conveyance to said Butterfield by deed, also dated in September, 1858. In about 1854 one of the grantors of Butterfield built a stable on the north half of the north half of the lot. When Butterfield obtained possession of the whole of the north half of lot 24, he enlarged the stable previously built on the north part covering also a part of the south half of the north half of the lot. This stable was used by the Overland Mail Company, with which Butterfield was connected, until 1861 or 1862 ; after that it was used under leases from, or by, permission of Butterfield and the said company, until 1867, when it was burned. Defendants claim under a regular chain of title from Butterfield. The whole of the lot was sold for taxes in 1868, and in 1874 the purchasers conveyed to one of defendants' grantors the whole lot. The entire lot sued for was leased by defendants and their grantors in 1875, and was used continuously to 1886 for storing therein farm machinery and sewer pipe. In this use the whole lot was occupied. The front was fenced with wire, and a platform built upon which to store machinery. In 1886 the building for business houses, which are now in use, was erected. Upon this state of facts the court sitting as a jury, found for defendants.

The contention on the part of the plaintiffs seems to be that as neither Painter nor his grantee Butterfield held their possession under color of paper title, their adverse possession was limited to the land actually occupied by their improvements, and, as it was not shown what part of the south half of the north half of the lot the buildings occupied, no adverse possession of that part of the lot, previous to the burning of the stable in 1867, was shown.

We do not deem it necessary in this case to determine what is required to constitute such color of title to a whole tract of land as will extend the actual possession of a part thereof, so as to make it cover and include the whole, or whether possession in good faith of a part of a tract, under a deed erroneously describing the property, would be under color of title.

The tax deed made to defendants' grantors in 1874 undoubtedly did constitute color of title. From 1875, to the commencement of this suit in 1888, a part if not the whole of the lot was in the actual, continuous, notorious and visible adverse possession of defendants, and those under whom they claimed. We are of the opinion that the evidence not only tended to prove, but conclusively showed, that defendants were rightfully in possession of the property by virtue of previous adverse possession.

No point is made in the abstract, assignment of errors or brief, that plaintiffs, or any one of them, were under disabilities which prevented or suspended the running of the statute. Finding no error in the record as submitted to us, the judgment will be affirmed. All concur.